**Opinion issued April 4, 2013**



In The

# Court of Appeals

For The

## First District of Texas

———————————

### NO. 01-11-01075-CV

———————————

**WIGHT REALTY INTERESTS, LTD., Appellant**

**V.**

**CITY OF FRIENDSWOOD, TEXAS, Appellee**

---

**On Appeal from the 405th District Court**
**Galveston County, Texas**
**Trial Court Case 09-CV-2123**

---

### O P I N I O N

Appellant, Wight Realty Interests, Ltd. ("Wight Realty"), challenges the trial court's orders granting appellee, the City of Friendswood (the "City"), summary judgment and its plea to the jurisdiction in Wight Realty's suit against the City for breach of contract. In four issues, Wight Realty contends that the trial court erred

in granting the City's summary-judgment motion and its plea to the jurisdiction, denying Wight Realty's summary-judgment motion, and overruling its evidentiary objections to documents that the City relied upon in the summary-judgment proceedings.

We reverse and remand.

## Background

This is the second appeal from the underlying proceedings between Wight Realty and the City. *See Wight Realty Interests, Ltd. v. City of Friendswood*, 333 S.W.3d 792 (Tex. App.—Houston [1st Dist.] 2010, no pet.) ("*Wight Realty I*"). As explained in more detail in our prior opinion in *Wight Realty I*, in September 2008, Wight Realty and the City executed an earnest money contract providing that Wight Realty would construct and develop for the City youth recreational sports facilities on a tract of land owned by Wight Realty and two adjoining tracts, which were to be acquired by Wight Realty. Upon completion, the City was to purchase all of the land and facilities. Specifically, in regard to the first tract of land, the City asked Wight Realty to "plan, prepare, build, and construct . . . certain recreational facilities according to [certain] plans and costs . . . ." In regard to the second tract, the City asked Wight Realty to "construct . . . a perimeter fence, grading and drainage improvements . . . ." In regard to the third tract, the City asked Wight Realty "to construct . . . a perimeter fence, grading and drainage

2

improvements . . . ." The contract further provided, in regard to each tract, the City with the option "at any time to terminate" the contract "in whole or in part" subject to the City's "obligation to pay" Wright Realty "damages pursuant to Section 13" of the contract. Under section 13, the City agreed, in the event of its termination of the contract, to "immediately pay" Wight Realty "all sums incurred by" Wight Realty for "Cost of Improvements" "plus" specific liquidated damages as the "agreed upon opportunity loss value of the termination of the sale . . . ."

Although the City terminated the contract in October 2009 prior to the transfer of any land or facilities from Wight Realty to the City, the City refused to pay Wight Realty for the costs it incurred for constructing the recreational facilities. Wight Realty filed suit against the City, asserting claims for breach of contract and estoppel and seeking recovery for its costs of construction and land acquisition and the contractual-termination damages.

In its plea to the jurisdiction, the City asserted that it is immune from suit, arguing that a statutory provision[1] that waives a city's immunity from suit for breach-of-contract claims involving the provision of "goods or services" did not apply because its contract with Wight Realty involves real property. In its response, Wight Realty argued that because it had provided the City with acquisition, development, and construction services, the City's immunity was

---

[1] *See* TEX. LOC. GOV'T CODE ANN. § 271.152 (Vernon 2005).

waived. Wight Realty attached to its response the affidavit of David Wight, Wight Realty's general partner, who testified that Wight Realty had, pursuant to the contract, acquired the adjoining tracts of land and commenced construction of the facilities. Wight noted that Wight Realty cleared the land, filled existing ponds with soil, dug a detention pond, and graded soccer and baseball fields. And Wight Realty spent $457,910.23 to provide the services and $540,000 to acquire the adjoining tracts of land.

The trial court granted the City's plea to the jurisdiction, dismissing Wight Realty's claims, and Wight Realty appealed. In *Wight Realty I*, this Court, concluding that the contract "plainly" required Wight Realty to provide "services" and contained "the essential terms of the parties' agreements," held that the City's immunity was waived. *Id*. at 798–99. Accordingly, we remanded the case for further proceedings. *Id*. at 799.

Following remand, the City filed another summary-judgment motion and plea to the jurisdiction, arguing, in part, that the contract that it drafted and entered into is illegal and void because the City did not have the authority to acquire the pertinent tracts of land for use as a park as they were situated outside of the counties in which the City is located.[2] The City noted that the land to be acquired

---

[2] *See* TEX. LOC. GOV'T CODE ANN. §§ 273.001, 331.001 (Vernon 2005).

4

from Wight Realty is located in Brazoria County, while the City is located in Galveston and Harris Counties.

Wright Realty filed a cross summary-judgment motion, arguing that it is entitled to judgment as a matter of law on its breach-of-contract claim because the City's contract with it is valid, it has performed the contract by acquiring the adjoining land and commencing construction, and the City has defaulted without making the contractually required payments. The trial court granted the City's summary-judgment motion and denied Wight Realty's summary-judgment motion. Subsequently, the trial court granted the City's plea to the jurisdiction.[3]

## Standard of Review

To prevail on a summary-judgment motion, a movant has the burden of proving that it is entitled to judgment as a matter of law and there is no genuine issue of material fact. TEX. R. CIV. P. 166a(c); *Cathey v. Booth*, 900 S.W.2d 339, 341 (Tex. 1995). When a defendant moves for summary judgment, it must either (1) disprove at least one essential element of the plaintiff's cause of action or (2) plead and conclusively establish each essential element of its affirmative defense, thereby defeating the plaintiff's cause of action. *Cathey*, 900 S.W.2d at 341; *Yazdchi v. Bank One, Tex., N.A.*, 177 S.W.3d 399, 404 (Tex. App.—Houston

---

[3] The City filed a single document entitled "Motion for Summary Judgment and Plea to the Jurisdiction," and it made no material distinction between its summary-judgment and jurisdictional arguments. And the trial court did not specify the basis upon which it entered its orders.

[1st Dist.] 2005, pet. denied). When deciding whether there is a disputed, material fact issue precluding summary judgment, evidence favorable to the non-movant will be taken as true. *Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 548–49 (Tex. 1985). Every reasonable inference must be indulged in favor of the non-movant and any doubts must be resolved in its favor. *Id*. at 549.

We review de novo a trial court's ruling on a jurisdictional plea. *See Kalyanaram v. Univ. of Tex. Sys.*, 230 S.W.3d 921, 925 (Tex. App.—Dallas 2007, no pet.). When reviewing a trial court's ruling on a challenge to its jurisdiction, we consider the plaintiff's pleadings and factual assertions, as well as any evidence in the record that is relevant to the jurisdictional issue. *City of Elsa v. Gonzalez*, 325 S.W.3d 622, 625 (Tex. 2010). We construe pleadings liberally in favor of the plaintiff, look to the pleader's intent, and determine whether the pleader has alleged facts affirmatively demonstrating the court's jurisdiction. *Id*. Allegations found in pleadings may affirmatively demonstrate or negate the court's jurisdiction. *City of Waco v. Kirwan*, 298 S.W.3d 618, 622 (Tex. 2009).

### The City's Summary-Judgment Motion

In its first issue, Wight Realty argues that the trial court erred in granting the City summary judgment on the ground that the City's contract with it is void because Texas Local Government Code sections 273.001 and 331.001 do not render the contract void and unenforceable. *See* TEX. LOC. GOV'T CODE ANN.

§§ 273.001, 331.001 (Vernon 2005). Wight Realty further asserts that the contract did not require competitive bidding, the City "judicially admitted" the validity of the contract, and the City is judicially estopped from denying the validity of the contract.

We first consider the parties' dispute concerning whether Local Government Code sections 273.001 and 331.001, which impose geographical limitations upon a municipality's acquisition of park land, apply here. Wight Realty argues that the provisions do not impose geographic restrictions upon the City's acquisition of park land because the City is a home-rule municipality that derives its power from the Texas Constitution and home-rule cities possess "broad power to acquire park land." The City counters that the trial court either properly dismissed Wight Realty's suit or, alternatively, properly granted it summary judgment on the ground that sections 273.001 and 331.001 render the contract, in its entirety, void and unenforceable.

Section 273.001 provides, in pertinent part,

(a)     A municipality may, in accordance with this chapter, *acquire property* separately or jointly with another municipality or other governmental entity by gift, dedication, or purchase, with or without condemnation.

(b)     *The property must be located within the county where the municipality or other governmental entity is located.* The property may be located inside or outside the corporate limits of the municipality.

7

(c)     The property must be used for the following public purposes:

(1)     parks and playgrounds;

. . . .

TEX. LOC. GOV'T CODE ANN. § 273.001 (emphasis added).

Section 331.001 provides,

(a)     A municipality or county may *improve* land for park purposes and may operate and maintain parks. The authority to improve the land includes the authority to construct buildings, lay out and pave driveways and walks, construct ditches or lakes, and set out trees and shrubs.

(b)     A municipality or county may by gift, devise, purchase, or eminent domain proceeding *acquire*:

(1)     land and buildings to be used for public parks, playgrounds, or historical museums; or

(2)     land on which are located:

(A)     historic buildings, sites, or landmarks of statewide historical significance associated with historic events or personalities;

(B)     prehistoric ruins, burial grounds, or archaeological or vertebrate paleontological sites; or

(C)     sites including fossilized footprints, inscriptions made by human agency, or any other archaeological, paleontological, or historic buildings, markers, monuments, or historical features.

(c)    Land *acquired* by a municipality under Subsection (b) may be situated inside or outside the municipality *but must be within the county in which the municipality is situated*, and land acquired by a county under Subsection (b) must be within the limits of the county. The land may be acquired in any size tract considered suitable by the governing body of the municipality or county.

*Id*. § 331.001 (emphasis added).

The Local Government Code defines "municipality" to mean "a general-law municipality, home-rule municipality,[4] or special-law municipality." *Id*. § 1.005(3) (Vernon 2008). Here, it is undisputed that the City is a home-rule municipality that is located in Harris and Galveston Counties, the land that is the subject of the contract between the City and Wight Realty is located in Brazoria County, and, pursuant to the contract, the City agreed to purchase the land from Wight Realty for use as a public park.

Home-rule municipalities, like the City, "derive their powers from the Texas Constitution, not the Legislature." *See* TEX. CONST. art. XI, § 5; *City of Galveston v. State*, 217 S.W.3d 466, 469 (Tex. 2007). They have "all the powers of the state not inconsistent with the Constitution, the general laws, or the city's charter." *City of Galveston*, 217 S.W.3d at 469; *see also Proctor v. Andrews*, 972 S.W.2d 729, 733 (Tex. 1998). However, the "broad powers" possessed by a home-rule city

---

[4]    A "home-rule municipality" is "a municipality designated by Chapter 5" as such "if it operates under a municipal charter that has been adopted or amended as authorized by Article XI, Section 5, of the Texas Constitution." TEX. LOC. GOV'T CODE ANN. §§ 1.005(2), 5.004 (Vernon 2008).

9

"may be limited by statute when the legislature's intention to do so appears 'with unmistakable clarity.'" *Proctor*, 972 S.W.2d at 733; *see also Lower Colo. River Auth. v. City of San Marcos*, 523 S.W.2d 641, 643 (Tex. 1975) (stating that "it is necessary to look to the acts of the legislature not for grants of power to such cities but only for limitations on their powers").

The plain language used by the Legislature in both sections 273.001 and 331.001 compels the conclusion that they apply to a home-rule municipality. Section 273.001, which is entitled "Acquisition of Property; Exercise of Police Power," is contained within Chapter 273 of the Local Government Code, which is entitled "Acquisition of Property for Public Purposes by Municipalities, Counties, and Other Local Governments." TEX. LOC. GOV'T CODE ANN. § 273.001. Chapter 273 is contained within Subtitle C of Title 8, which is entitled "Acquisition, Sale, or Lease Provisions Applying to More than One Type of Local Government." *Id*. Section 273.001 expressly provides that a municipality may, *in accordance with the chapter*, acquire property for purposes of public park land, and it expressly limits such acquisition to property "located within the county where the municipality or other governmental entity is located." *Id*. There is no indication in the structure of the Local Government Code or in the specific language used by the legislature in section 273.001 that the limitations contained therein are intended to be applied only to general law counties and local governments other than home-

10

rule municipalities. *Id*. Contrary to Wight Realty's arguments, there is also no suggestion that the limitations imposed by section 273.001 are only applicable to land acquisition that is accomplished "pursuant" to that section. Rather, section 273.001 expressly states that a municipality may, "in accordance with this chapter," acquire property for the purpose of "parks and playgrounds," and it imposes geographical limitations upon a municipality's acquisition of such land. *Id*.

Section 331.001, which is entitled "General Authority," is contained within Chapter 331 of the Local Government Code, which is entitled "Municipal and County Authority to Acquire and Maintain Parks, Museums, and Historic Sites." *Id*. § 331.001. Chapter 331 is contained within Title 10, Subtitle C, which is entitled "Parks and Other Recreational and Cultural Resources and Provisions Applying to More Than One Type of Local Government." *Id*. Section 331.001 expressly provides that a municipality may acquire land and buildings to be used for public parks, and it further provides that land acquired by a municipality under subsection (c) of 331.001 "must be within the county in which the municipality is situated." *Id*. § 333.001(c). Although Wight Realty is correct that, as a home-rule municipality the City possess "broad powers" derived from the Texas Constitution, we conclude that the legislature, by enacting these two provisions, has with

11

"unmistakable clarity" imposed geographical limits upon a municipality's, including a home-rule municipality, acquisition of land for parks purposes.

As noted above, the legislature, in drafting both sections 273.001 and 331.001, made them applicable to all municipalities, as that term is defined in the Local Government Code, rather than to any specific subset of local government. In the Local Government Code, the legislature set forth definitions for the terms "municipality," which includes home-rule municipalities, and "home-rule municipality," which is a narrower term. TEX. LOC. GOV'T CODE ANN. §§ 1.005(2), 5.004. And, reviewing the Local Government Code in its entirety, it is clear that the legislature drafted some provisions with the intent that they be applied more broadly to all municipalities, including home-rule municipalities, while other provisions be applied only to home-rule municipalities. *See id*. § 51.071 (Vernon 2008) (explaining that Subchapter E of Title 2 of Local Government Code applies "only to a home-rule municipality"); § 306.001 (Vernon 2005) (explaining that Chapter 306 of Local Government Code "applies only to home-rule municipalities with a population of more than 40,000").

Wight Realty's argument that the limitations contained within sections 273.001 and 331.001 do not apply to the City is based upon an overly-narrow interpretation of both sections. First, although the language used by the legislature in section 331.001 might be somewhat narrower, section 273.001 simply provides

12

that a municipality may, *in accordance with this chapter*, acquire property for parks and playgrounds, and it states that such property must be located within the county in which the municipality is located. *Id.* § 273.001. Second, in light of the fact that the legislature has enacted two provisions expressly imposing geographical limitations upon a municipality's acquisition of park property, the only reasonable interpretation of the two provisions is that the legislature has unmistakably limited a municipality's authority to acquire land for parks and playgrounds to land located within the county or counties in which the municipality is located.[5]

---

[5] In support of its argument, Wight Realty relies upon *City of College Station v. Turtle Rock Corp.*, 680 S.W.2d 802 (Tex. 1984). However, its reliance is misplaced. In *City of College Station*, the Texas Supreme Court primarily considered the issue of whether a home-rule city's ordinance that required a developer to dedicate park land as a condition to subdivision-plat approval constituted a taking of private property in violation of the Texas Constitution. *Id.* at 804 (citing TEX. CONST. art. 1, § 17). After citing numerous other jurisdictions that had held that similar land-dedication ordinances constituted legitimate exercises of police power, the supreme court held that the ordinance was not unconstitutionally arbitrary or unreasonable on its face. *Id.* at 805–06. The court then considered whether former article 6081e, which was the predecessor version of section 331.001 of the Local Government Code, precluded the enactment of the park-land dedication ordinance. *Id.* at 807. Emphasizing that home-rule cities possess "full power of self-government" and "look to the acts of the legislature not for grants of power . . . but only for limitations on their powers," the court concluded that former article 6081e did not "unmistakably" limit the power of a home-rule city to require, by ordinance exercised under its police power, neighborhood park land dedication for subdivision approval. *Id.* at 807. The court further noted that former article 6081e, which "also" applied to counties and general-law cities, served as a "grant of specific powers to these non-home rule entities." *Id.* at 807–08. But the court did not suggest that the geographical limitations contained within sections 331.001 or section 273.001, or any

13

Wight Realty next asserts that the City has judicially admitted to the validity of the contract or is "judicially estopped from denying the validity of the contract by virtue of the position it took in the Travis County lawsuit as well as the position it took in" *Wight Realty I*. Judicial admissions are "[a]ssertions of fact, not pled in the alternative, in the live pleadings of a party." *Hughes Wood Products, Inc. v. Wagner*, 18 S.W.3d 202, 207 (Tex. 2000). Under the doctrine of judicial estoppel, a party who has made a sworn statement in a pleading, deposition, oral testimony, or affidavit in a judicial proceeding is barred from maintaining a contrary position in a subsequent proceeding. *Brown v. Lanier Worldwide, Inc.*, 124 S.W.3d 883, 898 (Tex. App.—Houston [14th Dist.] 2004, no pet.). The elements of judicial estoppel, which is intended to prevent intentional self-contradiction as a method of gaining an unfair advantage, include (1) a sworn, prior inconsistent statement made in a prior judicial proceeding; (2) the successful maintenance of the contrary position in the prior action; (3) the absence of inadvertence, mistake, fraud, or duress in the making of the prior statement; and (4) the statement was deliberate, clear, and unequivocal. *Id*. at 899. A fact admitted by a prevailing party in a judicial proceeding "is established as a matter of law; the admitting party may not in a

predecessor versions, did not apply to a home-municipality's land acquisition for public park purposes. The basic holding in *City of College Station*, as related to the issue before us, is simply that former article 6081e contained no unmistakable limit to a home-rule city's authority to, pursuant to its police power, require park land dedication.

14

second proceeding dispute the admission or introduce evidence contrary to it." *Bailey-Mason v. Mason*, 334 S.W.3d 39, 43 (Tex. App.—Dallas 2008, pet. denied); *see also Ochoa v. Craig*, 262 S.W.3d 29, 32 (Tex. App.—Dallas 2008, pet. denied) ("Under the doctrine of judicial estoppel, a judicially admitted fact is established as a matter of law, and the admitting party may not dispute it or introduce evidence contrary to it.").

In the instant case, the City has not judicially admitted to the validity of the contract, but instead has presented a variety of alternative arguments against its enforcement, including the argument that the contract is void in its entirety because the City violated the Local Government Code by agreeing to purchase land that is located in a county in which the City is not located. Although we previously considered the parties' dispute concerning the City's waiver of immunity under section 271.152 of the Local Government Code in *Wight Realty I*, we have not directly addressed the legal arguments presented in this appeal. In its live pleading, the City has asserted that "the contract in question is void based on illegality of the contract, specifically, the contract violates Chapter 252 . . . and 331 of the [Local Government Code]." The issues concerning the applicability of sections 273.001 and 331.001 to the contract between the City and Wight Realty and whether the contract is enforceable in light of these two provisions have not been judicially admitted by the City.

In regard to the doctrine of judicial estoppel, prior to the filing of the instant lawsuit, the City sought a declaratory judgment in Travis County about its ability to proceed with its contract with Wight Realty.[6] Wight Realty asserts that in the Travis County proceeding the mayor of the City testified that he believed the City had a contract with Wight Realty and the City would be liable if it defaulted. The court in Travis County denied the relief requested by the City without issuing any findings of fact or conclusions of law. Here, although the City is now taking a contrary position to the position that it took in the Travis County action, the applicability of sections 273.001 and 331.001 presents a legal issue that was not resolved by the court in Travis County. It is undisputed that the City did not obtain the relief it sought in the Travis County action, and the court in Travis County did not expressly rule on the legal issue before us. Thus, the City is not estopped from asserting that its contract with Wight Realty is rendered unenforceable under the Local Government Code.

Having concluded that the geographical limitations imposed by sections 273.001 and 331.001 of the Local Government Code apply to home-rule cities, the question remains as to whether the trial court erred in granting the City summary

---

[6] Specifically, in the Travis County lawsuit, the City sought, among other things, a declaration that the City could issue Certificates of Obligation to fund the acquisition of the park land and recreational facilities.

16

judgment and its plea to the jurisdiction. We conclude that it did.[7] It is true that a home-rule municipality, like the City, is subject to the geographic limitations imposed by sections 273.001 and 331.001 regarding the *acquisition of property for parks and playgrounds*. However, these provisions do not, given the contract at issue, deprive the trial court of jurisdiction to determine Wight Realty's claim pertaining to the services that it rendered pursuant to the contract. Nor does the applicability of these provisions demonstrate that the City is entitled to judgment as a matter of law on Wight Realty's claim. This is because Wight Realty has not brought a suit for specific performance of the contract, i.e., it is not seeking an order compelling the City to acquire land in violation of the Local Government Code. Wight Realty is seeking damages for the services that it was required to render for the City pursuant to the contract. The contract, which was drafted by the

[7] We acknowledge that any claim by Wight Realty seeking specific performance of the contract, i.e., seeking a judgment compelling the City to acquire property for use as a park or playground outside of the counties in which it is located, would fail because such an obligation would not be enforceable. *See Lewis v. Davis*, 199 S.W.2d 146, 148–49 (Tex. 1947); *see also Merry Homes, Inc. v. Chi Hung Luu*, 312 S.W.3d 938, 946 (Tex. App.—Houston [1st Dist.] 2010, no pet.) ("[W]e must not enforce an illegal contract, particularly where the contract involves the doing of an act prohibited by statutes intended for the protection of the public health and welfare."); *Villanueva v. Gonzalez*, 123 S.W.3d 461, 464 (Tex. App.—San Antonio 2003, no pet.) ("A contract to do a thing which cannot be performed without violation of the law violates public policy and is void."); *Sacks v. Dallas Gold & Silver Exch., Inc.,* 720 S.W.2d 177, 180–81 (Tex. App.—Dallas 1986, no writ) ("A party may assert the defense of illegality to prevent the enforcement of an illegal contract against him even though he was himself equally guilty with the other party. . . . When parties are in equal fault the courts generally will not aid in the enforcement of the illegal contract, nor provide relief to a party who has executed the contract, but will leave the parties as they find them.").

City, required Wight Realty to provide certain construction, professional engineering, and design services in return for the City's promise of payment. Wight Realty presented evidence that it in fact engaged in such services and incurred specific costs in providing these contractually required services. Indeed, in its contract with Wight Realty, the City agreed that Wight Realty's remedy in the event of default or termination would be for the City to "immediately pay" to Wight Realty "all sums incurred by" it for the "cost of improvements" plus the specific liquidated damages "as the agreed upon opportunity loss value. . . ." And the City has not cited any authority that would preclude Wight Realty from seeking to recover these agreed-to damages. As we held in *Wight I*, the contract involved more than the mere transfer of property to be used as a public park—it required Wight Realty to, prior to any transfer of property, furnish the City services for which City has waived immunity.[8] 333 S.W.3d at 798–99.

---

[8] The contract at issue involved both the purchase of real estate and the provision of a variety of services, including real estate acquisition, planning, design, and construction services. And Wight Realty was contractually obligated to perform these services before ultimately transferring any real estate to the City. We note that the result we reach in this case, i.e., allowing Wight Realty to proceed on its claim for compensation for services it rendered under the contract, would be less remarkable if Wight Realty had been separately retained by the City to provide these services on land that was either already owned by or was to be acquired by the City. In that instance, Wight Realty would simply be a contracting party retained by the City to perform a variety of services. And, as we held in *Wight Realty I*, the legislature has expressly waived the City's immunity on contracts that involve the provision of services. 333 S.W.3d at 798. The City has not cited us to any authority to indicate that there is any legal obstacle to a contracting party, like Wight Realty, from seeking recovery of costs associated with services it provided

18

Accordingly, we hold that the trial court erred in granting the City's plea to the jurisdiction and summary-judgment motion on the ground that sections 273.001 and 331.001 of the Local Government Code preclude Wight Realty's breach-of-contract claim related to the services that it provided under the contract.[9]

Finally, we address the City's argument that the contract is void and unenforceable because it did not comply with competitive bidding requirements. *See* TEX. LOC. GOV'T CODE ANN. § 252.021 (Vernon Supp. 2012) (prescribing competitive bidding requirements for municipality purchases requiring expenditure of more than $50,000 from municipal funds). As Wight Realty notes, there are several exceptions to the competitive bidding requirements. First, competitive bidding requirements do not apply to a "procurement necessary to preserve or protect the public health or safety of the municipality's residents." *Id.* § 252.022(a)(2) (Vernon Supp. 2012). Although both parties vigorously dispute whether this exception applies, neither party cites any authority to support their positions. Wight Realty correctly notes that in the Travis County action, the City

---

to the City pursuant to a contract. Although we agree that the Local Government Code would preclude any claim for specific performance to compel the transfer of real estate, there is no legal impediment to Wight Realty's claim for the agreed-to damages for the services that it was contractually obligated to provide to the City.

[9] To the extent that Wight Realty also requests a remand on its promissory estoppel claim, we note that Wight Realty did not appeal, in *Wight Realty I*, the trial court's prior order dismissing this claim. It has, thus, waived any challenge to that order.

19

took the legal position that the development of the youth recreational sports facilities for the benefit of its citizens was necessary to public safety. We agree with both the City's legal position that it maintained in the Travis County action and Wight Realty's legal position in this action and conclude that that the performance of the services required under the contract before us, i.e., services related to the development of youth recreational sports facilities, may constitute procurements "necessary to preserve or protect the public health or safety of the municipality's residents." *Id*. Second, we note that the competitive bidding requirements do not apply to a "procurement for personal, professional, or planning services." *Id*. §252.022(a)(4). The record contains ample evidence that Wight Realty was engaged in professional planning, civil engineering, and design services under the contact. Accordingly, we hold that the trial court erred in granting the City's plea to the jurisdiction and summary-judgment motion on the ground that the City did not meet the competitive bidding requirements.

We sustain Wight Realty's first issue.

## Wight Realty's Summary-Judgment Motion

In its second issue, Wight Realty argues that the trial court erred in not granting it summary judgment because it established, as a matter of law, that the City breached the contract and refused to pay the agreed-to damages.

20

We have previously concluded that Wight Realty is entitled to a remand on its breach-of-contract claim related to its provision of services under the contract. We have reviewed the summary-judgment evidence presented by Wight Realty, and we conclude that there exists a question of fact as to the amount of damages that Wight Realty is entitled to recover for the services that it furnished under the contract. Specifically, we note that Wight Realty has not conclusively established, as a matter of law, the specific amount of fees that related to the construction, planning, and design of the youth recreational sports facilities as well as fees related to the acquisition of real estate, but not including any fees for the actual real estate itself. Accordingly, we hold that the trial court did not err in denying Wight Realty's summary-judgment motion.

We overrule Wight Realty's second issue.

## Conclusion

We reverse the judgment of the trial court and remand for proceedings consistent with this opinion.

Terry Jennings
Justice

Panel consists of Justices Jennings, Higley, and Sharp.

21