COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS



| | | |
|---|---|---|
| DOUBLE H CONTRACTING, INC. and HECTOR HINOJOS, SR., | § | |
| | § | No. 08-23-00345-CV |
| Appellants, | | |
| | § | Appeal from |
| v. | § | 384th District Court of |
| EL PASO WATER UTILITIES PUBLIC SERVICE BOARD, as Agent for THE CITY OF EL PASO; THE CITY OF EL PASO; | § | of El Paso County, Texas |
| ZTEX CONSTRUCTION, INC.; and TAO INDUSTRIES, INC. d/b/a HAWK | § | (TC# 2023-DCV-1654) |
| CONSTRUCTION, | § | |
| Appellees. | § | |

## <u>DISSENTING OPINION</u>

Double H contends EPWater, as agent of the City of El Paso, violated procurement statutes and terms of its own competitive sealed bid solicitation (CSP No. 30-23), by issuing contracts to two offerors—who ranked lower than Double H on the established scoring matrix—whereas Texas law only permitted issuance of a full contract to the highest-ranked offeror. On appeal, Double H raised multiple issues. It sought a reversal of the trial court's summary judgment order, and for this Court to render judgment in its favor as a matter of law. Alternatively, Double H requested that this Court reverse the summary judgment order to the extent that fact issues remain on the issue of whether EPWater's solicitation drew more than one "highest-ranked proposer," or whether the work contemplated under CSP No. 30-23 properly fell under the health and safety exemption of

the Texas Local Government Code. *See* Tex. Loc. Gov't Code Ann. § 252.022(a)(2). Because the majority decides the health and safety exemption is dispositive, it determines that no procurement law governs or otherwise limits the City's power to award additional contracts, as it sees fit, to address a backlog of repairs needing completion. Because I disagree with the Court's reasoning and disposition, I respectfully dissent.

Texas law provides that municipalities must comply with procedures prescribed by law before entering into a contract requiring an expenditure of more than $50,000. *See* Tex. Local Gov't Code Ann. § 252.021(a); *see also* Tex. Gov't Code Ann. §§ 2155.062(d) and 2269. Relevant here, Chapter 2269 of the Government Code "applies to a public work contract made by a governmental entity authorized by state law to make a public work contract," to include a political subdivision of the state. Tex. Gov't Code Ann. § 2269.002(2)(E). When selecting a contractor for a public work contract through competitive sealed proposals, the statutory provision applicable to that delivery method provides that a governmental entity "shall follow the procedures provided by this subchapter." *See id*. § 2269.151. Unlike Chapter 2269, however, Chapter 252 of the Local Government Code provides that a contract for civil works construction "must be awarded to the lowest responsible bidder[.]" Tex. Loc. Gov't Code Ann. § 252.043(d). But within this chapter, the "public health and safety exemption" otherwise applies if a procurement is "necessary to preserve or protect the public health or safety of the municipality's residents." Tex. Local Gov't Code Ann. § 252.022(a)(2). By each of these provisions and others not relevant here, the legislature has limited the City's home-rule powers when it expends funds of greater than $50,000 in value on a public work contract.

Based on the record here, EPWater's solicitation covered pavement repair work that was *not* intended to address an ongoing emergency. Rather, the solicitation addressed completion of general repairs where excavation and underground work had already been performed by EPWater,

by one of its in-house crews. Upon completion of EPWater's initial work, the excavated area would be covered with steel plates and barricades until additional work was performed to complete the necessary repair. CSP 30-23's scope of work, then, narrowly addressed the non-emergency aspect of repairing public rights-of-ways (ROW) *after* emergency circumstances were already resolved. The value of the contract associated with CSP 30-23 amounted to at least $3.9 million based on Double H's proposal, or up to $7.4 million based on an agenda item placed on EPWater's May 2023 public-meeting notice.

Here, the majority decides that Chapter 252's public health and safety exemption is applicable to the exclusion of other relevant provisions. For two principal reasons, I disagree. First, the majority concludes that CSP 30-23 "is congruent with procurements that other courts have found to fall within [Chapter 252's] public health and safety exemption." But in my view, the cases and authority relied on are factually distinguishable, as each pertains to a fundamentally different type of work or service than the type of work at issue here. For example, in *In re USA Promlite Tech., Inc.*, 636 B.R. 743, 761–62 (Bankr. S.D. Tex. 2022), the case involved a contract to retrofit streetlights with LED bulbs. There, the court found this lighting equipment fell within the public health and safety exemption because lights "are used to prevent crime." Additionally, in *City of Mission v. BFI Waste Svcs. of Texas, LP*, 2013 WL 12100805, at \*5 (S.D. Tex. July 19, 2013), the case concerned contracts for the collection and disposal of solid waste. There, a waste company successfully argued that waste-management contracts, as a class, are exempt as a public health and safety exemption from the competitive bidding requirements of Chapter 252. *Id.* at \*5 (citing Tex. Local Gov't Code Ann. § 252.022, and *Browning-Ferris, Inc. v. Leon Valley*, 590 S.W.2d 729, 733–34 (Tex. App.—San Antonio 1979, writ ref'd n.r.e.)). Similarly, in *Wight Realty Interests, Ltd. v. City of Friendswood*, 433 S.W.3d 26, 36 (Tex. App.—Houston [1st Dist.] 2013, pet. denied), a developer of recreational facilities including soccer and baseball fields established the contract

qualified as a matter of public health and safety because it related to the development of youth sports. Finally, in Tex. Att'y Gen. Op. JC-0281 (2000) the opinion concerned a contract with a temporary day labor agency for garbage collection. Unlike the majority, I disagree that any of these authorities align well with the street repair work covered by CPS No. 30-23. Of note, none pertain to non-emergency road work. Rather, the cited cases pertain to public health (i.e., youth recreation; and waste management) and public safety (crime prevention).

Second, I am not persuaded that Mr. Trejo's affidavit alone establishes an evidentiary basis to invoke the public health and safety exemption as a matter of law. *See Davray, Inc. v. City of Midlothian, Texas*, No. A.3:04-CV-0539-B, 2005 WL 1586574, at *11 (N.D. Tex. July 6, 2005) (determining it could not simply accept the city's ipse dixit that its procurement was necessary for the health and safety of residents without eviscerating Texas's requirement that qualifying expenditures be competitively bid). As *Davray* cautions, a city must produce some evidentiary basis for its actions when claiming an exemption. *Id*. Here, Mr. Trejo's affidavit includes a number of individual claims wherein he asserts the two additional contracts would be beneficial as they would promote the faster completion of rights-of-way repairs; they would allow faster removal and re-setting of steel plates located in roadways, which have the "potential to shift as a result of passing traffic;" and they would "help relieve public concerns regarding potential safety hazards to motorists or pedestrians."

To be sure, I agree that Mr. Trejo's affidavit provides probative evidence of reasons that EPWater may view the street repair work as necessary to protect public health and safety. But even so, as the president of Double H, Hector Hinojos, Jr., pointed out in an affidavit provided as a supplemental response to EPWater's summary judgment motion, the city's transportation manager, Jose Gutierrez, had acknowledged in an email that "the restoration of a utility cut is not an emergency and is related to scheduled work resulting in a permit requirement." Hinojos's affidavit

avers that "the term 'restoration of utility cut' is a term commonly used in the civil works street restoration industry that refers to the permitted, permanent engineered restoration of the temporarily restored excavation area performed by EPWater personnel as a part of its emergency response to repair a utility line break." As further background, Hinojos's affidavit also described that he had interacted with the city's transportation manager, on September 18, 2023, in connection with Double H's work orders issued under its CSP 30-23 contract. A copy of the email from Gutierrez to Hinojos is attached to Hinojos's affidavit. The email includes Gutierrez's acknowledgement of the non-emergency nature of the work, along with Gutierrez's additional comment that "[e]mergencies exist only when there is a present danger to life, health or property, including but not limited to utility service outage." Double H relies on Gutierrez's admission to raise a genuine issue of fact. Given this evidentiary conflict, I would hold at minimum that a fact issue exists on whether the public health and safety exemption applied to the solicitation at issue. To this extent, I disagree that EPWater established as a matter of law that it could lawfully circumvent the entire statutory scheme to ultimately award multiple contracts on CSP 30-23. For these reasons, I would reverse the trial court's summary judgment order and remand for resolution of the factual determination. Because the majority did not reach other issues presented, I limit my remarks to the first issue only.

GINA M. PALAFOX, Justice

October 29, 2024

Before Alley, C.J., Palafox and Soto, JJ.
Palafox, J., dissenting

5