# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-07-00003-CV

**Alexander Vallejo, Appellant**

**v.**

**Texas Department of Family and Protective Services, Appellee**

## FROM THE DISTRICT COURT OF TRAVIS COUNTY, 126TH JUDICIAL DISTRICT NO. D-1-FM-06-000091, HONORABLE SUZANNE COVINGTON, JUDGE PRESIDING

## O P I N I O N

Alexander Vallejo challenges the district court's order terminating his parental rights. He does not challenge the termination itself; rather, he challenges the court's findings that he committed certain acts or omissions justifying termination and that termination is in the best interest of the child. Vallejo contends that, because he filed an affidavit of voluntary relinquishment, the trial court had no authority to make those findings.

The Department sought termination of Vallejo's parental rights to A.V. After the termination hearing began, Vallejo executed an affidavit of voluntary relinquishment of his parental rights. The court proceeded to terminate his parental rights involuntarily, listing four bases and the best interest of the child as set out in the statute:

> The court may order termination of the parent-child relationship if the court finds by clear and convincing evidence:

(1) that the parent has:

. . . ;

(D) knowingly placed or knowingly allowed the child to remain in conditions or surroundings which endanger the physical or emotional well-being of the child;

(E) engaged in conduct or knowingly placed the child with persons who engaged in conduct which endangers the physical or emotional well-being of the child;

. . . ;

(K) executed before or after the suit is filed an unrevoked or irrevocable affidavit of relinquishment of parental rights as provided in this chapter;

. . . ; [or]

(N) constructively abandoned the child who has been in the permanent or temporary managing conservatorship of the Department of Protective and Regulatory Services or an authorized agency for not less than six months, and:
   (i) the department or authorized agency has made reasonable efforts to return the child to the parent;
   (ii) the parent has not regularly visited or maintained significant contact with the child; and
   (iii) the parent has demonstrated an inability to provide the child with a safe environment; [and]

(2) that termination is in the best interest of the child.

Tex. Fam. Code Ann. § 161.001 (West 2008). Vallejo does not challenge the sufficiency of the evidence to support these findings. Indeed, at a post-trial hearing, he conceded that the evidence is sufficient to support the findings under subsections (D) and (E).

2

Vallejo contends that the findings under (D) and (E) were unwarranted and unauthorized because affidavits of voluntary relinquishment of parental rights are effective on execution and are not subject to analysis regarding the best interest of the child. *See id.* § 161.103 (West 2008). He contends that his voluntary relinquishment rendered the involuntary termination aspects of the proceeding moot and stripped the district court of jurisdiction to determine whether any other ground for involuntary relinquishment existed. Vallejo requests that this Court vacate the affirmative findings that his actions or inactions endangered the children under subsections (D) and (E) because those determinations could affect his parental rights to other children that he might one day have. *See id.* § 161.001(1)(M). He also requests that we vacate the finding that termination is in A.V.'s best interest.

We do not find support for Vallejo's contention that the filing of an affidavit of voluntary relinquishment ends an involuntary termination proceeding and strips the trial court of jurisdiction to assess alternate bases for termination and the best interest of the child. The statute governing such affidavits does not describe how parental rights are terminated after execution of the affidavit, *id.* § 161.103, but the statute outlining the procedure for involuntary termination of parental rights expressly provides that the execution of an affidavit of voluntary relinquishment, along with a finding that the termination is in the child's best interest, supports termination of parental rights. *Id.* § 161.001.

Family code chapter 161 governs termination of the parent-child relationship. *See id.* §§ 161.001-.201 (West 2008). There are seven sections in a subchapter entitled "Grounds." *See*

3

*id.* §§ 161.001-.007.[1]   Section 161.001, entitled Involuntary Termination of Parent-Child Relationship states that a court may terminate parental rights if the court finds by clear and convincing evidence at least one of several types of acts or omissions by the parent that supports termination and that termination of parental rights is in the best interest of the child. *Id.* § 161.001. One basis for termination is if the parent "executed before or after the suit is filed an unrevoked or irrevocable affidavit of relinquishment of parental rights as provided in this chapter." *Id.* § 161.001(1)(K).   There is no provision stating that the filing of an affidavit of voluntary relinquishment ends the trial court's inquiry as to other bases for termination or regarding the best interest of the child.[2]

We find support for the view that the trial court did not err by considering bases for termination other than Vallejo's affidavit of relinquishment in the statute entitled "Termination

---

[1]   The other sections apply to specific situations such as the rights of an alleged biological father, involuntary termination based on inability to care for the child, termination of rights after a prior denial of a petition to terminate, termination when the parent is the petitioner, termination after abortion, and termination when pregnancy results from a criminal act.  Tex. Fam. Code Ann. §§ 161.002-.007 (West 2008).

[2]   *But see In re B.B.F.*, 595 S.W.2d 873, 874 (Tex. Civ. App.—San Antonio 1980, no writ) (holding that natural parent who executed affidavit of relinquishment was not entitled to service in termination suit because "[a]fter executing an unrevoked or irrevocable affidavit of relinquishment of parental rights, a natural parent is no longer an interested party in a suit to terminate the parent-child relationship"); *see also Brown v. McLennan County Children's Protective Servs.*, 616 S.W.2d 699, 702 (Tex. Civ. App.—Waco 1981), *aff'd*, 627 S.W.2d 390, 393 (Tex. 1982).

This case is distinct from *B.B.F.* and *Brown* in that those cases concerned parties who had waived service who then sought to complain about not receiving service. *Brown*, 616 S.W.2d at 701; *B.B.F.*, 595 S.W.2d at 874.  Here, by contrast, we have a party who received service and was participating in a trial, then filed an affidavit of relinquishment, and now argues that his filing of the affidavit instantly deprived the court of jurisdiction to assess any ground for termination of his parental rights other than his voluntary relinquishment.

4

When Parent is Petitioner." *Id*. § 161.005. That section provides in relevant part, "A parent may file a suit for termination of the petitioner's parent-child relationship. The court may order termination if termination is in the best interest of the child." *Id.* § 161.005(a). The requirement that a court considering a parent's petition to terminate must find termination in the child's best interest undercuts Vallejo's argument that the trial court erred by assessing whether termination of his parental rights was in A.V.'s best interest. We are not persuaded that a court must assess the child's best interest when considering a parent's petition to terminate, but errs by doing so when considering a parent's affidavit of voluntary relinquishment.

We find further support for this view in Section 161.103, entitled "Affidavit of Voluntary Relinquishment of Parental Rights." This section, containing the requisites of a relinquishment affidavit, is in the subchapter entitled "Procedures." It states that the affidavit may contain "a waiver of process in a suit to terminate the parent-child relationship filed under this chapter or in a suit to terminate joined with a petition for adoption." *Id*. § 161.103(c). If an affidavit of voluntary relinquishment vitiated a termination proceeding there would be no need for service of process or a waiver of that process. If an affidavit of relinquishment does not prohibit the inception of a suit to terminate the parent-child relationship (for which process would be served), we see no basis for concluding that an affidavit of relinquishment automatically ends an ongoing case. Nor is there support for Vallejo's allegation that a voluntary relinquishment obviates the issue of the child's best interest. Section 161.103 requires an allegation that termination is in the best interest of the child. *Id*. § 161.103(b)(6). Sections 161.001 and 161.103 are consistent with a system that permits parents to voluntarily relinquish their parental rights, but requires court action to terminate their

5

parental rights. *See Terrell v. Chambers*, 630 S.W.2d 800, 803 (Tex. App.—Tyler 1982) ("The signing of an affidavit of relinquishment, however, does not affect the requirement that the trial court must still find under § 15.02 that termination is in the best interest of the child."), *aff'd sub nom. Chambers v. Terrell*, 639 S.W.2d 451 (Tex. 1982).

Vallejo argues that the provision permitting a court to consider a voluntary relinquishment affidavit during an involuntary termination proceeding is designed only to allow a court to consider that affidavit when the affiant seeks to revoke that affidavit. While courts may use a voluntary relinquishment affidavit for that reason, we find no support for the proposition that this is the exclusive way the affidavit may be used in an involuntary termination proceeding. Instead, the fact that affidavits are revocable—even when initially styled as irrevocable—supports the view that termination is not effected until the court makes it so. We are not persuaded that the filing of an affidavit of voluntary relinquishment prevents the trial court from making findings regarding other bases for involuntary termination or the best interest of the child.

The adoption statute also supports this interpretation. It provides in relevant part:

> If an affidavit of relinquishment of parental rights contains a consent for the Department of Protective and Regulatory Services or a licensed child-placing agency to place the child for adoption and appoints the department or agency managing conservator of the child, further consent by the parent is not required and the adoption order shall terminate all rights of the parent without further termination proceedings.

Tex. Fam. Code Ann. § 162.001(c) (West 2008). This statute demonstrates that some action by a court is needed to terminate the parent's rights even in the face of an affidavit of relinquishment and pending adoption. If, as Vallejo argues, the affidavit of voluntary relinquishment immediately

6

and automatically terminated parental rights without more, there would be no need for the adoption order to terminate the parent's rights. In this case, which ended without adoption, further termination proceedings were still needed.

When arguing that termination of parental rights is automatic upon filing of an affidavit of voluntary relinquishment and that best interest is not required, Vallejo relies on *Texas Department of Family Protective Services v. Alternatives in Motion, Inc.*, 210 S.W.3d 794 (Tex. App.—Houston [1st Dist.] 2006, pet. denied). He contends that, when a voluntary relinquishment affidavit designates a licensed child-placement agency as a managing conservator, the agency automatically has a right to possession superior to the parent filing the affidavit and best interest analysis applies only to conservatorship. We find no statutory support for the argument to limit the best interest analysis. Vallejo relies on the following passage from *AIM*:

> Because the best interest of the child must be considered, we conclude that while *appointment of a party* designated in an affidavit of relinquishment in place of the parent whose rights are *voluntarily terminated* is *automatic* for the purpose of termination proceedings, appointment of that party as managing conservator in a suit to determine conservatorship of the child is subject to proof that the appointment is in the child's best interest.

210 S.W.3d at 804 (emphases added). Vallejo indicates by the italicized words that termination is automatic upon voluntary relinquishment. Instead, we are of the view that what the court held was automatic is the appointment of the party designated as conservator in the affidavit, as shown by the words in bold.

7

The language of Vallejo's affidavit is consistent with the interpretation that the affidavit alone does not effect termination of parental rights and does not end the involuntary termination suit. After statements relinquishing his parental rights, the affidavit provides:

> I fully understand that a lawsuit has been filed in Travis County, to terminate forever the parent-child relationships between me and the above-named Child. I fully understand that the termination suit may or may not be combined with a suit to adopt my Child. I understand that either way, once the Court terminates my parental rights, I have no further say concerning my Child, whether or not my child [is] adopted then or at some later time.
>
> . . . .
>
> I do not want to be informed further about the lawsuit, and I waive and give up my rights to be given notice about anything going on in the lawsuit. I specifically agree that a final hearing in the lawsuit may be held at a time without further notice to me.
>
>  . . . .
>
> I FULLY UNDERSTAND THAT I WILL NOT BE INFORMED FURTHER ABOUT THE TERMINATION SUIT.
>
> . . . .
>
> Termination of the parent-child relationships between me and my Child, so that they may be placed for adoption, is in the best interest of the Child. I understand that I make this termination possible by executing this Affidavit.

Although Vallejo argues that these passages merely acknowledge that the suit will continue as to conservatorship, these passages acknowledge that the termination suit has been filed and will continue without Vallejo's involvement after the execution of the affidavit. The statements that "once the Court terminates my parental rights, I have no further say concerning my Child" and that execution of the affidavit "make[s] the termination possible" anticipates that, despite the

execution of the affidavit, further action will be needed to terminate Vallejo's parental rights. Although the affidavit is not law, it is consistent with the interpretation of the statutes that a voluntary relinquishment affidavit does not moot further proceedings in an involuntary termination proceeding. It does not strip the court of jurisdiction to consider other grounds for termination, and does not prevent the court from assessing the child's best interest.

We find further support for the proposition that an affidavit of voluntary relinquishment does not automatically and immediately terminate a parental relationship in public policy. Vallejo's view that his rights were terminated immediately upon execution of the affidavit is inconsistent with the revocability of some affidavits. Even when the affidavit is irrevocable, public policy does not favor allowing immediate termination if termination is not in the child's best interest. For instance, if termination would leave the child without financial support from a financially capable but disinterested parent, public policy would not favor letting the parent dispense with his obligation on the parent's whim. Public policy also disfavors allowing a parent to put the State to the expense of gathering and adducing evidence and, then, to preempt the trial court from making findings regarding what it has heard.

The statute establishing the requisites of a voluntary relinquishment affidavit contemplates that the involuntary termination proceeding will occur despite the execution of the affidavit. *See* Tex. Fam. Code Ann. § 161.103(c). The involuntary termination statute expressly states that the execution of an affidavit of voluntary relinquishment is one of several possible grounds supporting termination. *Id*. § 161.001(1)(K). Neither statute states that the execution of the affidavit is sufficient alone to support termination, and neither states that the execution of an

9

affidavit of voluntary relinquishment immediately and automatically concludes a termination proceeding. Although a proper affidavit must designate a person or agency to act as managing conservator and thereby surrender the parent's superior right to possession, *see id.* § 161.103(a)(12), we conclude that it does not automatically, finally terminate parental rights. Both the affidavit of relinquishment statute and the involuntary termination statute have provisions relating to the best interest of the child—the affiant must swear that termination is in the child's best interest, *id.* § 161.103(b)(6), and the court must find that termination is in the child's best interest, *id.* § 161.001(2). Neither statute prohibits the court from considering other bases for termination, and neither statute prohibits the court from making a finding that termination is in the best interest of the child. *See id.* §§ 161.001, .103. Rather, the affidavit statute is silent regarding such a finding, and the involuntary termination statute requires a finding that termination of parental rights is in the child's best interest. *See id.*

Concluding that the trial court did not err by assessing bases for involuntary termination of parental rights other than Vallejo's execution of an affidavit of voluntary relinquishment and by assessing the best interest of the child, we affirm the trial court's judgment.

_____

G. Alan Waldrop, Justice

Before Justices Patterson, Pemberton and Waldrop

Affirmed

Filed:   March 27, 2009

10