

# NUMBER 13-16-00302-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

## IN THE INTEREST OF E.J.R., A CHILD

### On appeal from the 404th District Court
### of Cameron County, Texas.

## OPINION

### Before Chief Justice Valdez and Justices Rodriguez and Benavides
### Opinion by Justice Rodriguez

Appellant N.L.C. and appellee J.J.I. are the biological parents of E.J.R., a child.[1] At N.L.C.'s request, J.J.I. signed an irrevocable affidavit relinquishing his parental rights, and N.L.C. filed a petition seeking to terminate the parent-child relationship between J.J.I. and E.J.R. However, J.J.I. appeared at the hearing on N.L.C.'s petition and testified that he did not want to lose his rights as E.J.R.'s parent. The trial court denied N.L.C.'s

---

[1] We will refer to the parties and to their child by their initials in order to protect the minor's identity and privacy. *See* TEX. R. APP. P. 9.8(b); TEX. FAM. CODE ANN. § 109.002(d) (West, Westlaw through 2015 R.S.).

petition, allowing J.J.I. to retain his parental rights.   By four issues on appeal, N.L.C. contends that in view of J.J.I.'s affidavit, the trial court erred in denying her petition.[2]   We affirm.

## I.   BACKGROUND

The following is undisputed.   On October 23, 2013, N.L.C. gave birth to E.J.R.   At the time of the birth, N.L.C. was married to J.C., but N.L.C. suspected that J.J.I. was the biological father.   In November 2013, a DNA test confirmed that J.J.I. was the biological father of E.J.R.   J.J.I. was also married at the time of the conception and birth of E.J.R., but he subsequently divorced.   J.J.I. is now remarried and has three other children.   The Attorney General brought a paternity suit against J.J.I., and in September 2014, J.J.I. was adjudicated as the biological father of E.J.R.   The trial court appointed N.L.C. as sole managing conservator and J.J.I. as possessory conservator.   The court implemented a graduated visitation program for J.J.I., beginning with twenty periods of supervised visitation until the child was at least two years of age.

On January 14, 2016, J.J.I. executed a document titled Father's Affidavit for Voluntary Relinquishment of Parental Rights, pursuant to the Texas Family Code (the "Affidavit").   *See* TEX. FAM. CODE ANN. § 161.103 (West, Westlaw through 2015 R.S.). In the Affidavit, J.J.I. attested, "I freely and voluntarily give and relinquish to N.L.C. all my parental rights and duties" with respect to E.J.R.   The Affidavit designated N.L.C. as managing conservator, and it further stated that "[t]ermination of the parent-child relationship is in the best interest of the child."   The Affidavit set out, in bold font, "This

---

[2] J.J.I. did not file a brief in response to N.L.C.'s appeal.

2

affidavit is revocable only if the revocation is made before the eleventh day after the date the affidavit is executed."

On January 25, 2016, N.L.C. filed a petition seeking the termination of the parent-child relationship between J.J.I. and N.L.C. Attached to the petition was J.J.I.'s Affidavit. The trial court heard N.L.C.'s petition on May 2, 2016. J.J.I. appeared at the hearing and testified pro se. He did not deny that he had validly executed the Affidavit under the family code or claim that he had revoked the Affidavit. Instead, he testified that he loved and had spent time with his daughter, but that N.L.C. had made supervised visitations so difficult that he had reluctantly executed the Affidavit at N.L.C.'s request, believing it would be better for E.J.R. to be adopted by N.L.C.'s husband J.C. He testified, however, that this was a mistake and he wished to retain a role in his daughter's life. J.J.I. stated that he had brought many of his family members to meet E.J.R., including his mother and three other children, and he showed the trial judge several photos of the time he spent with E.J.R. He also admitted that he had been behind on child support obligations which had accrued from E.J.R.'s birth until the 2014 order adjudicating paternity, but attested that he completely caught up on his obligations once he was adjudicated as the father. According to J.J.I., he had attempted to spend more time with E.J.R., but N.L.C. had taken lengthy leaves of absence from Cameron County, had refused J.J.I.'s request for unsupervised visits at his home, and had unilaterally discontinued supervised visitation at the previous location—the home of N.L.C.'s parents—and insisted that J.J.I. pay to arrange supervision at a different location.

For her part, N.L.C. testified that J.J.I. had been only minimally involved in E.J.R.'s life; whereas the order adjudicating paternity had granted him the right to regular four-

3

hour visitations, she testified that he often visited E.J.R. for one to two hours. She testified that after E.J.R. was born, J.J.I. had "stalled the court dates" for the attorney general's suit concerning paternity and child support obligations for nearly a year, and that his primary concern was paying child support. Finally, counsel for N.L.C. argued that it was N.L.C.'s right to refuse unsupervised visitations because J.J.I. had allegedly not completed the number of supervised visits required under the 2014 order adjudicating paternity.

At the conclusion of the hearing, the trial court denied N.L.C.'s petition for termination. The trial court entered the following relevant findings of fact:

2. The court finds Respondent [J.J.I.] loves his child;

3. The court finds Respondent has been deprived from exercising his right to see his child as granted to him in the court decree;

4. The court finds Respondent is frustrated with the inability to see and visit his daughter;

5. The court finds Respondent testified in open court that he does not want to relinquish his parental rights if he is allowed to see his child;

6. The court finds Respondent's signing of the relinquishment of parental rights was motivated by his inability to see his child and said frustration led to his reluctant signing of the relinquishment and termination of parental rights affidavit;

7. The court finds Respondent would not have shown up to the court hearing had he wanted to terminate his parental rights;

8. The court finds the child will have two families who love the child— her mom and her stepfather and her dad and his family;

9. The court finds it is in the best interest of the child to keep the child's father in the child's life.

N.L.C. filed this appeal shortly before the trial court entered its finding and conclusions.

## II. LEGAL EFFECT OF AN IRREVOCABLE AFFIDAVIT OF RELINQUISHMENT

N.L.C.'s first, second, and fourth issues on appeal are related, and we take them up together. By her first issue, N.L.C. argues that the trial court reversibly erred by "setting aside" J.J.I.'s Affidavit. By her second issue, N.L.C. argues that an affidavit of relinquishment is, standing alone and *per se*, clear and convincing evidence which conclusively establishes that termination is in a child's best interest. By her fourth issue, N.L.C. argues that it was J.J.I.'s burden to satisfy the trial court that termination was inappropriate and that in light of the Affidavit, J.J.I.'s evidence on this point was legally and factually insufficient.

### A. Standard of Review and Applicable Law

"A parent's right to the companionship, care, custody, and management of [his] children is a constitutional interest far more precious than any property right." *In re. D.S.P.*, 210 S.W.3d 776, 778 (Tex. App.—Corpus Christi 2006, no pet.) (quoting *Santosky v. Kramer*, 455 U.S. 745, 758–59 (1982)) (internal quotations omitted). Because of the fundamental rights at issue, due process requires that termination be supported by clear and convincing evidence. *In re. K.M.L.*, 443 S.W.3d 101, 112 (Tex. 2014); *In re. L.J.N.*, 329 S.W.3d 667, 671 (Tex. App.—Corpus Christi 2010, no pet.). Clear and convincing evidence is "the measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." TEX. FAM. CODE ANN. § 101.007 (West, Westlaw through 2015 R.S.); *In re. P.R.W.*, No. 13-15-00552-CV, __S.W.3d__, __, 2016 WL 2989160, at *3 (Tex. App.—Corpus Christi May 17, 2016, no pet.).

Before parental rights may be involuntarily terminated, the trier of fact must find

two elements by clear and convincing evidence: (1) that the parent committed one of the statutory acts found in section 161.001(1) of the family code, and (2) that termination is in the children's best interest. TEX. FAM. CODE ANN. § 161.001 (West, Westlaw through 2015 R.S.); *In re. E.N.C.*, 384 S.W.3d 796, 803 (Tex. 2012). The filing of an irrevocable or unrevoked affidavit of relinquishment is one of the statutory acts that may serve as grounds for involuntary termination under section 161.001(1). TEX. FAM. CODE ANN. § 161.001(1)(K); *Vallejo v. Tex. Dep't of Family & Protective Servs.*, 280 S.W.3d 917, 918–19 (Tex. App.—Austin 2009, no pet.). As the petitioner, N.L.C. bore the burden to prove the grounds for termination by clear and convincing evidence. *See Burns v. Burns*, 434 S.W.3d 223, 227 (Tex. App.—Houston [1st Dist.] 2014, no pet.).

N.L.C. challenges the legal and factual sufficiency of the evidence supporting the trial court's decision. When "a party attacks the legal sufficiency of an adverse finding on an issue on which she has the burden of proof, she must demonstrate on appeal that the evidence establishes, as a matter of law, all vital facts in support of the issue." *Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 241 (Tex. 2001) (per curiam); *In re. A.L.D.H.*, 373 S.W.3d 187, 192 (Tex. App.—Amarillo 2012, pet. denied) (applying this standard to the denial of a petition for parental termination). For a legal sufficiency challenge in a parental termination suit, we review the entire record in the light most favorable to the finding of the trier of fact, assuming that the trier of fact resolved disputed facts in favor of its finding if a reasonable factfinder could do so. *In re. A.L.D.H.*, 373 S.W.3d at 193; *see In re. J.F.C.,* 96 S.W.3d 256, 266 (Tex. 2002). We will sustain N.L.C.'s legal sufficiency challenge and reverse the adverse finding only if, as a matter of law, N.L.C.'s evidence conclusively establishes the "contrary proposition" to the adverse finding. *See Dow*

*Chem.*, 46 S.W.3d at 241; *see also In re. D.S.G.*, No. 13-10-00683-CV, 2011 WL 3366368, at *4 (Tex. App.—Corpus Christi Aug. 4, 2011, no pet.) (mem. op.).[3]

When a party attacks the factual sufficiency of an adverse finding on an issue on which she has the burden of proof, she must demonstrate on appeal that the adverse finding is against the great weight and preponderance of the evidence. *Dow Chem.*, 46 S.W.3d at 242. The court of appeals must consider and weigh all of the evidence, and we may set aside a verdict only if the evidence is so weak or if the finding is so against the great weight and preponderance of the evidence that it is clearly wrong and unjust. *Id.* For a factual sufficiency review in the context of a proceeding to terminate parental rights, a reviewing court must consider the heightened burden of proof—clear and convincing evidence—necessary to establish a ground for termination. *Burns*, 434 S.W.3d at 227 (citing *In re. J.F.C.*, 96 S.W.3d at 264–66). "We examine the record in this case in light of the high evidentiary burden that [N.L.C.] bore and our required

---

[3] The "contrary proposition" which N.L.C. must establish is perhaps not subject to precise formulation, but it is shaped by the petitioner's burden in the trial court: where the petitioner introduces clear and convincing evidence that a parent committed a statutory act under section 161.001 and that the child's best interest is served by termination, the trial court may order termination. *See* TEX. FAM. CODE ANN. § 161.001 (West, Westlaw through 2015 R.S.); *In re. E.N.C.*, 384 S.W.3d 796, 803 (Tex. 2012). The "contrary proposition" is also shaped by the inverse of the ordinary appellate standard of review: where the trier of fact orders that parental rights should be terminated, we review termination findings by asking whether the evidence is such that the factfinder could reasonably form a firm belief or conviction about the petitioner's allegations concerning the two elements above. *In re. C.H.*, 89 S.W.3d 17, 25 (Tex. 2002).

Thus, the "contrary proposition" which N.L.C. must conclusively establish could be loosely stated as: that any reasonable trier of fact would have unavoidably formed a firm belief that the parent had committed an act listed in section 161.001 and that termination was in the best interest of the child, and that the trier of fact would have ordered termination on the basis of this belief. *See In re. A.L.D.H.*, 373 S.W.3d 187, 193 (Tex. App.—Amarillo 2012, pet. denied) (reviewing sufficiency by determining whether it was "of such a character that it *had to* produce in the mind of the factfinder a firm belief or conviction that termination was in the best interest of the child" (emphasis added)); *see also Burns v. Burns*, 434 S.W.3d 223, 227 (Tex. App.—Houston [1st Dist.] 2014, no pet.) (same). The *A.L.D.H.* court derived its standard from this Court's holding in *In the Interest of D.S.G.*, where we applied a similar standard to a legal sufficiency review. *See* No. 13-10-00683-CV, 2011 WL 3366368, at *4 (Tex. App.—Corpus Christi Aug. 4, 2011, no pet.) (mem. op.).

appellate deference to the trial court's decision that the evidence did not meet it." *Id.* at 228.

## B.    Analysis

In her first issue, N.L.C. argues that the trial court erred by "setting aside" J.J.I.'s irrevocable Affidavit.   It is undisputed that the Affidavit met the minimum requirements under section 161.103 and that J.J.I. did not attempt to revoke the Affidavit at any time, let alone within the ten-day window provided by the Affidavit.   She argues that the trial court therefore erred in "setting aside" the Affidavit.

In support of her argument, N.L.C. first cites the rule that a party seeking to overturn a termination order based on an unrevoked affidavit of relinquishment is limited to pursuing a collateral or direct attack based on fraud, duress, or coercion in the execution of the affidavit.   TEX. FAM. CODE ANN. § 161.211(c) (West, Westlaw through 2015 R.S.); *In re. M.A.W.*, 31 S.W.3d 372, 375–76 (Tex. App.—Corpus Christi 2000, no pet.).   We find this rule to be inapposite.   By its terms, this rule deals with the limited grounds for a direct or collateral attack on an order granting termination.   Here, by contrast, we review an order denying termination.   This rule says nothing about the permissible grounds of review for an order denying termination or any other question related to this case.[4]

---

[4] N.L.C. attempts to strengthen this argument by likening J.J.I.'s position to a direct or collateral attack on an implied order of termination.   She argues that when J.J.I. executed the Affidavit, the execution had an immediate legal effect—vesting N.L.C. with an immediate right of possession—that was similar to an automatic termination, which J.J.I. attacked at the hearing.   *See* TEX. FAM. CODE ANN. § 161.104 (West, Westlaw through 2015 R.S.) (recognizing that the execution of a relinquishment affidavit immediately assigns certain rights to a party designated in the affidavit); *see also Tex. Dep't of Family Protective Servs. v. Alts. in Motion, Inc.*, 210 S.W.3d 794, 804 (Tex. App.—Houston [1st Dist.] 2006, pet. denied).

We are not persuaded by N.L.C.'s argument.   The execution of an irrevocable affidavit does not have the immediate effect of terminating the parent's rights or of shifting the burden of proof to the parent

N.L.C. also cites the similar rule that once the proponent of an affidavit has established that the affidavit was executed according to the terms of the Texas Family Code, the affidavit itself "may be set aside only upon proof, by a preponderance of the evidence, that the affidavit was executed as a result of coercion, duress, fraud, deception, undue influence, or overreaching." *Vela v. Marywood*, 17 S.W.3d 750, 758 (Tex. App.—Austin 2000, no pet.) (quoting *In re. Bruno*, 974 S.W.2d 401, 405 (Tex. App.—San Antonio 1998, no pet.)). This rule is also inapplicable. The record reveals that the trial court did not set aside the Affidavit. The trial court did not strike the Affidavit, did not allow J.J.I. to revoke or otherwise nullify the Affidavit, and did not take any other action which might strip the Affidavit of its rightful force. The "irrevocability of the affidavit of relinquishment merely prevents the parent from withdrawing the affidavit as a ground for terminating the parent/child relationship." *Terrell v. Chambers*, 630 S.W.2d 800, 803 (Tex. App.—Tyler 1982, writ ref'd n.r.e.) (citing *Allred v. Harris Cnty. Child Welfare Unit*, 615 S.W.2d 803 (Tex. Civ. App.—Houston [1st Dist.] 1980, no writ)); *see also In re. J.L.J.*, 352 S.W.3d 536, 541–42 (Tex. App.—El Paso 2011, no pet.). The trial court did not allow J.J.I. to withdraw the Affidavit as a potential ground for termination. *See Terrell*, 630 S.W.2d at 803.

Rather, the crux of N.L.C.'s first issue appears to be that the trial court effectively "set aside" the Affidavit by not giving it conclusive effect on the issue of the child's best interest—an argument which is the main thrust of N.L.C.'s second issue. N.L.C. cites

resisting termination. *In re. J.L.J.*, 352 S.W.3d 536, 542 (Tex. App.—El Paso 2011, no pet.); *Vallejo v. Tex. Dep't of Family & Protective Servs.*, 280 S.W.3d 917, 920 (Tex. App.—Austin 2009, no pet.). J.J.I.'s participation in the termination proceeding was not a direct or collateral attack on some implied or automatic legal order of termination, and the rule cited by N.L.C. is inapplicable.

several cases which, she argues, show that the Affidavit must be given conclusive effect. In this line of cases, many of our sister courts have relied on *Brown v. McLennan County Children's Protective Services* in holding that an affidavit of relinquishment may, in itself, serve as sufficient evidence on which the trial court can find that termination is in the best interest of the child and order termination. *See* 627 S.W.2d 390, 394 (Tex. 1982); *In re. A.L.H.*, 468 S.W.3d 738, 741–42 (Tex. App.—Houston [14th Dist.] 2015, no pet.); *Lumbis v. Tex. Dep't of Protective & Regulatory Servs.*, 65 S.W.3d 844, 850 (Tex. App.—Austin 2002, pet. denied); *In re. Bruno*, 974 S.W.2d at 405; *Ivy v. Edna Gladney Home*, 783 S.W.2d 829, 832 (Tex. App.—Fort Worth 1990, no writ).[5]

However, even when these cases are taken to their fullest logical extent, they do not compel the result which N.L.C. seeks to achieve here. These cases hold that an affidavit of relinquishment *may* be a *sufficient* basis, in itself, to find the child's best interest; but these cases do not hold that such an affidavit, by necessity, requires the trial court to order an involuntary termination, as N.L.C. argues. *See In re. Morris*, __S.W.3d__, __, No. 14-16-00227-CV, 2016 WL 3457953, at *3 (Tex. App.—Houston [14th Dist.] June 22, 2016, no. pet. h.); *In re. K.D.*, 471 S.W.3d 147, 164 (Tex. App.—Texarkana 2015, no pet.) (citing *Vallejo*, 280 S.W.3d at 918). The same evidence of statutory acts or omissions under section 161.001(1) may be probative in determining the best interest of the child, but proof of these acts or omissions does not relieve the petitioner from showing the best interest of the child. *In re. C.H.*, 89 S.W.3d 17, 28 (Tex. 2002); *see Vallejo*, 280 S.W.3d at 919–20. Put differently, while the execution of an

---

[5] We assume for the purposes of this appeal, but need not decide, that these courts are correct. *But see In re. K.S.L.*, __S.W.3d__, __, No. 04-16-00020-CV, 2016 WL 3727952, at *2 (Tex. App.—San Antonio July 6, 2016, no. pet. h.); *In re. K.D.*, 471 S.W.3d 147, 164 (Tex. App.—Texarkana 2015, no pet.).

affidavit of relinquishment of parental rights is relevant to the inquiry whether termination of parental rights is in the best interests of the child, such an affidavit "is not *ipso facto* evidence that termination is in the child's best interest." *In re. K.D.*, 471 S.W.3d at 164 (quoting *In re. A.H.*, 414 S.W.3d 802, 806 (Tex. App.—San Antonio 2013, no pet.)); *see also Byrne v. Catholic Charities, Diocese of San Angelo, Inc.*, 710 S.W.2d 780, 782 (Tex. App.—Austin 1986, no writ) ("This provision requires proof of both elements; the proof of the first does not excuse proof of the second.").

Even when an affidavit is irrevocable, public policy does not favor the conclusion that an affidavit of relinquishment makes termination mandatory. *See Vallejo*, 280 S.W.3d at 921. "For instance, if termination would leave the child without financial support from a financially capable but disinterested parent, public policy would not favor letting the parent dispense with his obligation on the parent's whim." *Id.* Rather than being compelled to oblige a parent's desire for termination, the trial court may be better guided by a "child's need for stability" and the recognition that "a change in custody usually disrupts the child's living arrangements and the channels of a child's affection, and in effect alters the entire tenor of the child's life." *In re. C.T.*, 491 S.W.3d 323, 328 (Tex. 2016) (orig. proceeding). Indeed, there is "a strong presumption that the best interest of the child is served by preserving the parent-child relationship, and the burden of proof rests upon the party seeking to deprive the parent of his or her parental rights." *In re. K.S.*, 448 S.W.3d 521, 536 (Tex. App.—Tyler 2014, pet. denied); *see In re. R.R.*, 209 S.W.3d 112, 116 (Tex. 2006) (per curiam).

With those rules in mind, we next address N.L.C.'s fourth issue, wherein she challenges the legal and factual sufficiency of the evidence to support the trial court's

finding.   The Fourteenth Court of Appeals recently addressed a similar argument based on similar facts, stating:

> This court has recognized that an affidavit of relinquishment suffices as evidence on which the trial court may make a finding that termination of the relinquishing parent's rights is in the child's best interest.   But, this court has not held that an affidavit of relinquishment requires the trial court to find that terminating the parent-child relationship would be in the child's best interest or that an affidavit of relinquishment by itself proves that fact as a matter of law.

*In re. Morris*, __S.W.3d at __, 2016 WL 3457953, at *3 (internal citations omitted).   The *Morris* court ultimately found against the relator because, aside from a document relating to relinquishment, the relator offered minimal evidence to show that termination was in the child's best interest.   *Id.* at **3–4.

Similarly, here, N.L.C. offered only the Affidavit and her own testimony as to two deficiencies in J.J.I.'s support of E.J.R.:   that he did not use all of his allotted four hours of visitation time and that he had, at first, resisted a lawsuit for paternity and child support. She presented no other evidence to disturb the "strong presumption" that the father's support was in E.J.R.'s best interest, *see In re. R.R.*, 209 S.W.3d at 116, such as evidence that J.J.I. was a danger to E.J.R.'s health or emotional well-being, that E.J.R. desired a termination, that J.J.I. was unable to responsibly fulfill his role as a parent, or that he had committed any actions which made him an unsuitable parent.   *See Holley v. Adams,* 544 S.W.2d 367, 371–72 (Tex. 1976).

By contrast, J.J.I. testified that he loved E.J.R. and that he wanted to remain in E.J.R.'s life.   He testified that he was current on his child support obligations and had brought each of his three children and his mother to meet E.J.R.   J.J.I. further stated that he had spent ample time with her and had relished it, and he offered several photos of

12

the time he had spent with E.J.R., which the trial court reviewed. According to J.J.I., he had attempted to spend more time with E.J.R., but he was rebuffed by N.L.C., who had also impeded supervised visitations. As the ultimate judge of the credibility of the evidence, the trial court entered much of the substance of this testimony into its findings of fact and conclusions of law, *supra*, which were supported by the record. *See Editorial Caballero, S.A. de C.V. v. Playboy Enters., Inc.*, 359 S.W.3d 318, 329 (Tex. App.—Corpus Christi 2012, pet. denied) (noting that in a *Dow Chemical* sufficiency review, the factfinder is the "sole judge" of the evidence's credibility).[6]

In summary: the trial court was not required to—and did not—set aside the Affidavit in order to reach the question of whether termination was in E.J.R.'s best interest, as N.L.C. contends in her first issue. *See Terrell*, 630 S.W.2d at 803; *see also In re. C.H.*, 89 S.W.3d at 28; *In re. K.D.*, 471 S.W.3d at 164. Even without setting the Affidavit aside, the trial court was not required to give conclusive effect to the Affidavit, as N.L.C. contends in her second issue. *See In re. Morris*, __S.W.3d at __, 2016 WL 3457953, at *3; *In re. K.D.*, 471 S.W.3d at 164. As in *Morris*, this Affidavit was among the only evidence which N.L.C. offered in support of her burden to show that E.J.R.'s best interests were served by termination of J.J.I.'s parental rights, and J.J.I. responded with testimonial and photographic evidence of his desire and ability to support E.J.R. *See In re. Morris*,

---

[6] On a related front, N.L.C. also argues that the Affidavit qualifies under the doctrines of judicial admission and judicial estoppel, which foreclosed J.J.I. from offering any evidence on E.J.R.'s best interest. However, the record reveals that N.L.C. did not bring this argument before the trial court and that she instead solicited J.J.I.'s evidence by prompting him during the hearing. Therefore, we will not consider this argument on appeal. *See* TEX. R. APP. P. 33.1; *In re. D.E.H.*, 301 S.W.3d 825, 828 (Tex. App.—Fort Worth 2009, pet. denied); *see also Bhamani v. Citizens Enters., Inc.*, No. 11-13-00041-CV, 2015 WL 1779055, at *7 (Tex. App.—Eastland Apr. 16, 2015, no pet.) (mem. op.) (applying rule 33.1 to hold that a judicial estoppel issue was waived).

13

__S.W.3d at __, 2016 WL 3457953, at *3.  We assume that the trier of fact, as the ultimate judge of the credibility of this evidence, reasonably resolved these disputed facts in favor of its finding.  *See In re. J.F.C.*, 96 S.W.3d at 266; *In re. A.L.D.H.*, 373 S.W.3d at 193; *see also Editorial Caballero*, 359 S.W.3d at 329.  Viewing all of the record evidence in the light most favorable to the trial court's finding, we cannot conclude that N.L.C. established, as a matter of law, the contrary proposition to the trial court's finding that termination was not warranted.  *See Dow Chem.*, 46 S.W.3d at 241; *In re. A.L.D.H.*, 373 S.W.3d at 192; *see also In re. D.S.G.*, 2011 WL 3366368, at *4.  Furthermore, in light of the high evidentiary burden which N.L.C. bore, we conclude that N.L.C. has not shown that the trial court's finding was against the great weight and preponderance of the evidence.  *See Dow Chem.*, 46 S.W.3d at 242; *Burns*, 434 S.W.3d at 228.  We therefore cannot sustain the legal and factual sufficiency challenges raised in N.L.C.'s fourth issue.

We overrule N.L.C.'s first, second, and fourth issues.

### III.    REVIEW OF *HOLLEY* FACTORS

By her third issue, N.L.C. contends that even if the trial court was not required to give the Affidavit conclusive force as to E.J.R.'s best interest, the trial court committed reversible error through the manner in which it reviewed the evidence concerning E.J.R.'s best interest.  N.L.C. argues that as part of its review, the trial court was required to consider and apply the factors set out in *Holley v. Adams*.  544 S.W.2d at 371–72.[7]

---

[7] The *Holley* factors include (1) the desires of the child, (2) the emotional and physical needs of the child now and in the future, (3) the emotional and physical danger to the child now and in the future, (4) the parental abilities of the individuals seeking custody, (5) the programs available to assist these individuals to promote the best interest of the child, (6) the plans for the child by these individuals or by the agency seeking custody, (7) the stability of the home or proposed placement, (8) the acts or omissions of the parent which may indicate that the existing parent-child relationship is not a proper one, and (9) any excuse for the acts or omissions of the parent.  *Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976).

14

N.L.C. argues that because there is no indication that the trial court considered these factors before determining E.J.R.'s best interest, the trial court reversibly erred. N.L.C. relies upon *In the Interest of K.S.L.* as her sole support for this argument. *See* __S.W.3d__, __, No. 04-16-00020-CV, 2016 WL 3727952, at *2 (Tex. App.—San Antonio July 6, 2016, no. pet. h.).

However, contrary to N.L.C.'s interpretation, *K.S.L.* holds that in deciding whether termination would be in the best interest of the child, the trial court "*may* apply the non-exhaustive *Holley* factors to shape their analysis." *Id.* (emphasis added). Consistent with the use of the permissive word "may," Texas courts "have held that a trial court does not err in failing to separately consider the *Holley* factors when presented with an affidavit of relinquishment." *In re. K.D.*, 471 S.W.3d at 162 (citing *In re. A.G.C.*, 279 S.W.3d 441, 452 (Tex. App.—Houston [14th Dist.] 2009, no pet.); *Ivy*, 783 S.W.2d at 833).

Furthermore, while the *K.S.L.* court did reverse an order of termination, the court did not do so because the trial court failed to consider the *Holley* factors. Rather, the *K.S.L.* court reversed the termination because the party pursuing termination had presented little evidence related to the child's best interest aside from an affidavit of relinquishment—which resembles the situation here. *See In re. K.S.L.*, __S.W.3d at __, 2016 WL 3727952, at *2. The court discussed *Holley* only to emphasize that the proponent of termination had presented little evidence concerning the child's best interests, as those best interests are represented by *Holley* factors such as "the desires of the child," "the emotional and physical danger to the child now and in the future," and "the parental abilities of the individuals seeking custody." *See id.* (citing *Holley*, 544 S.W. at 371–72). Thus, to the extent that *K.S.L.* has any bearing on this case, it does not favor

15

N.L.C.'s position on appeal. N.L.C. offers no other authority for the proposition that the trial court was required to expressly analyze this case under the *Holley* factors, even as it reached its determination against the backdrop of the "strong presumption" that the father's support was in E.J.R.'s best interest. *See In re. R.R.*, 209 S.W.3d at 116.

We conclude that the trial court did not err by failing to expressly consider the *Holley* factors in reaching its determination. *See In re. K.D.*, 471 S.W.3d at 162. We overrule N.L.C.'s third issue.

## IV. CONCLUSION

We affirm the judgment of the trial court.

NELDA V. RODRIGUEZ
Justice

Delivered and filed the
29th day of September, 2016.

16