# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---

## NO. 03-17-00451-CV

---

**S. S., Appellant**

**v.**

**Texas Department of Family and Protective Services, Appellee**

---

**FROM THE COUNTY COURT AT LAW OF BASTROP COUNTY**
**NO. 15-17513, HONORABLE BENTON ESKEW, JUDGE PRESIDING**

---

## M E M O R A N D U M   O P I N I O N

This is an appeal from a final order, following a bench trial, terminating the parental rights of appellant S.S.  In two issues on appeal, S.S. asserts that the evidence is legally and factually insufficient to support the trial court's finding that termination of his parental rights was in the best interest of the children.  We will affirm the trial court's order.

## BACKGROUND

The Texas Department of Family and Protective Services (the Department) brought suit to terminate the parental rights of S.S. and H.T. to their two children, fourteen-year-old S.K.S. and four-year-old V.S., based on allegations that the parents had, among other grounds for termination, engaged in conduct or knowingly placed the children with persons who engaged in conduct that endangered the physical or emotional well-being of the children, specifically drug use and domestic violence.  The case proceeded to a bench trial.  The evidence considered by the trial

court, which we discuss in more detail below, included the testimony of H.T., who discussed her history with S.S.; Tim Enevoldsen, a licensed professional counselor who had provided counseling services to S.K.S. while the case was ongoing; Danairy Nevarez, an investigator for Child Protective Services (CPS); and Dawn Daniel, a caseworker for the Department. During trial, S.S. and H.T. each executed an affidavit relinquishing their parental rights to the children. At the conclusion of trial, the trial court took judicial notice of the parents' affidavits, found that termination of S.S.'s and H.T.'s parental rights was in the best interest of the children, and ordered that the parental rights of S.S. and H.T. be terminated.[1] This appeal by S.S. followed.[2]

## STANDARD OF REVIEW

"Because the natural right between a parent and his child is one of constitutional dimensions, termination proceedings must be strictly scrutinized."[3] "In parental termination cases, due process requires application of the clear and convincing standard of proof."[4] Clear and convincing evidence is a heightened burden of proof that requires "the measure or degree of proof

---

[1] In its written order of termination, the trial court specified that the statutory ground for termination was that S.S. and H.T. had "executed before or after the suit is filed an unrevoked or irrevocable affidavit of relinquishment of parental rights." *See* Tex. Fam. Code § 161.001(b)(1)(K).

[2] H.T. has not filed a notice of appeal.

[3] *In re K.M.L.*, 443 S.W.3d 101, 112 (Tex. 2014) (citing *Holick v. Smith*, 685 S.W.2d 18, 20 (Tex. 1985); *In re G.M.*, 596 S.W.2d 846, 846 (Tex. 1980)).

[4] *Id*. (citing *Santosky v. Kramer*, 455 U.S. 745, 769 (1982); *In re J.F.C.*, 96 S.W.3d 256, 263 (Tex. 2002)).

that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established."[5]

"In a legal sufficiency review, a court should look at all the evidence in the light most favorable to the finding to determine whether a reasonable trier of fact could have formed a firm belief or conviction that its finding was true."[6] "To give appropriate deference to the factfinder's conclusions and the role of a court conducting a legal sufficiency review, looking at the evidence in the light most favorable to the judgment means that a reviewing court must assume that the factfinder resolved disputed facts in favor of its finding if a reasonable factfinder could do so."[7] "A corollary to this requirement is that a court should disregard all evidence that a reasonable factfinder could have disbelieved or found to have been incredible."[8] However, "[t]his does not mean that a court must disregard all evidence that does not support the finding."[9] The reviewing court must consider "undisputed facts that do not support the finding."[10] "If, after conducting its legal sufficiency review of the record evidence, a court determines that no reasonable factfinder could

---

[5] Tex. Fam. Code § 101.007; *see K.M.L.*, 443 S.W.3d at 112.

[6] *J.F.C.*, 96 S.W.3d at 266.

[7] *Id.*

[8] *Id.*

[9] *Id.*

[10] *Id.*

form a firm belief or conviction that the matter that must be proven is true, then that court must conclude that the evidence is legally insufficient."[11]

"[A] proper factual sufficiency review requires the court of appeals to determine whether 'the evidence is such that a factfinder could reasonably form a firm belief or conviction about the truth of the State's allegations.'"[12] "If, in light of the entire record, the disputed evidence that a reasonable factfinder could not have credited in favor of the finding is so significant that a factfinder could not reasonably have formed a firm belief or conviction, then the evidence is factually insufficient."[13] "And in making this determination, the reviewing court must undertake 'an exacting review of the entire record with a healthy regard for the constitutional interests at stake.'"[14] However, "while parental rights are of a constitutional magnitude, they are not absolute."[15] "Consequently, despite the heightened standard of review," the reviewing court "must nevertheless still provide due deference to the decisions of the factfinder, who, having full opportunity to observe witness testimony first-hand, is the sole arbiter when assessing the credibility and demeanor of witnesses."[16]

---

[11] *Id*.

[12] *In re A.B.*, 437 S.W.3d 498, 502-03 (Tex. 2014) (quoting *In re C.H.*, 89 S.W.3d 17, 25 (Tex. 2002)).

[13] *J.F.C.*, 96 S.W.3d at 266.

[14] *A.B.*, 437 S.W.3d at 503 (quoting *C.H.*, 89 S.W.3d at 26).

[15] *Id*.

[16] *Id*. (citing *In re J.L.*, 163 S.W.3d 79, 86-87 (Tex. 2005)).

4

## ANALYSIS

In two issues on appeal, S.S. asserts that the evidence is legally and factually insufficient to support the district court's finding that termination of his parental rights was in the best interest of the children. When deciding the best-interest issue, we consider the well-established *Holley v. Adams* factors, which include the child's wishes, the child's emotional and physical needs now and in the future, emotional or physical danger to the child now and in the future, the parenting abilities of the party seeking custody, programs available to help that party, plans for the children by the party seeking custody, the stability of the proposed placement, the parent's conduct indicating that the parent-child relationship is improper, and any excuses for the parent's conduct.[17] The Department need not prove all of the *Holley* factors as a "condition precedent" to termination, and the absence of some factors does not bar the factfinder from finding by clear and convincing evidence that termination is in a child's best interest.[18] The need for permanence is the paramount consideration when determining the children's present and future physical and emotional needs.[19] Moreover, a parent's statutorily offensive conduct is often intertwined with the best-interest determination.[20]

---

[17] *See* 544 S.W.2d 367, 371-72 (Tex. 1976).

[18] *C.H.*, 89 S.W.3d at 27.

[19] *In re D.R.A.*, 374 S.W.3d 528, 533 (Tex. App.—Houston [14th Dist.] 2012, no pet.) (citing *Dupree v. Texas Dep't of Protective & Regulatory Servs.*, 907 S.W.2d 81, 87 (Tex. App.—Dallas 1995, no writ)).

[20] *Horvatich v. Texas Dep't of Protective & Regulatory Servs.*, 78 S.W.3d 594, 601 (Tex. App.—Austin 2002, no pet.) (citing *Holley*, 544 S.W.2d at 372; *Leal v. Texas Dep't of Protective & Regulatory Servs.*, 25 S.W.3d 315, 321 (Tex. App.—Austin 2000, no pet.)).

As an initial matter, we observe that S.S. executed an affidavit relinquishing his parental rights, which this Court and others have held constitutes sufficient evidence, "in and of itself," that termination of parental rights is in the best interest of the children.[21]  Moreover, the Dallas Court of Appeals, in the case of *In re J.H.*, has held that when an order terminating parental rights is based on the execution of an affidavit of relinquishment, the parent who executed the affidavit "cannot make any arguments on appeal except arguments relating to fraud, duress, or coercion in the execution of the affidavit."[22]  In this case, S.S. has made no such argument.

However, the San Antonio Court of Appeals, in the case of *In re K.S.L.*, "decline[d] to follow" *J.H.* and held instead "that the State is not relieved of its burden to prove best interest merely because a parent has executed a voluntary and irrevocable affidavit of relinquishment of parental rights."[23]  Similarly, other Texas appellate courts have held that "while the execution of an affidavit of relinquishment 'is relevant to the best interest inquiry[,] . . . such a relinquishment is not

---

[21] *See In re A.G.C.*, 279 S.W.3d 441, 452-53 (Tex. App.—Houston [14th Dist.] 2009, no pet.); *Lumbis v. Texas Dep't of Protective & Regulatory Servs.*, 65 S.W.3d 844, 851 n.1 (Tex. App.—Austin 2002, pet. denied); *Ivy v. Edna Gladney Home*, 783 S.W.2d 829, 833 (Tex. App.—Fort Worth 1990, no writ); *see also In re R.W.*, No. 11-15-00234-CV, 2016 Tex. App. LEXIS 3122, at *4-5 (Tex. App.—Eastland Mar. 22, 2016, no pet.) (mem. op.); *In re Z.F.*, No. 07-14-00448-CV, 2015 Tex. App. LEXIS 3998, at *4 (Tex. App.—Amarillo Apr. 21, 2015, no pet.) (mem. op.).

[22] 486 S.W.3d 190, 198 (Tex. App.—Dallas 2016, no pet.).  The court's holding was based on its interpretation of section 161.211 of the Family Code, which provides that "[a] direct or collateral attack on an order terminating parental rights based on an unrevoked affidavit of relinquishment of parental rights or affidavit of waiver of interest in a child is limited to issues relating to fraud, duress, or coercion in the execution of the affidavit."  Tex. Fam. Code § 161.211(c); *see J.H.*, 486 S.W.3d at 198; *see also Moore v. Brown*, 408 S.W.3d 423, 434-38 (Tex. App.—Austin 2013, pet. denied).

[23] 499 S.W.3d 109, 113-14 (Tex. App.—San Antonio 2016, pet. granted).

6

*ipso facto* evidence that termination is in the child's best interest."[24] The Texas Supreme Court has granted review in *K.S.L.* to address these issues.[25]

For purposes of this appeal, however, the above issues are not dispositive, because in this case, there is legally and factually sufficient evidence to support the trial court's best-interest finding beyond the affidavit of relinquishment alone. This evidence includes the testimony of H.T., the children's mother, who testified that at the end of her relationship with S.S., S.S. had "abandoned [her] and [their] kids," leaving them with "no money, no food or no way for [her] to get anywhere to get [] food." H.T. also testified that during their relationship, S.S. had hit her, "strangled" her, and pushed her to the ground on multiple occasions. During one such incident, H.T. recounted, S.S. had also assaulted his father when the father had attempted to intervene and prevent S.S. from strangling H.T.

H.T. further testified that the couple had a prior case with CPS in 2014 that arose "because of [their] drug use," which H.T. claimed had occurred throughout their fourteen-year relationship. Although the prior case had ended with the children being returned to them, H.T. testified that between the end of that case and the start of this case, she and S.S. had used methamphetamine and marihuana "[p]retty much every day" and that S.S. was the person who had provided the drugs. When the Department asked H.T. "who was taking care of the children while

---

[24] *In re K.D.*, 471 S.W.3d 147, 164 (Tex. App.—Texarkana 2015, no pet.) (quoting *In re A.H.*, 414 S.W.3d 802, 806 (Tex. App.—San Antonio 2013, no pet.)); *see also In re E.J.R.*, 503 S.W.3d 536, 543-45 (Tex. App.—Corpus Christi 2016, pet. filed) (holding that trial court is not required to give "conclusive effect" to affidavit of relinquishment in determining child's best interest).

[25] *See In re K.S.L.*, No. 16-0558, 2017 Tex. LEXIS 608, at *1 (Tex. June 23, 2017).

you and [S.S.] were doing methamphetamine," H.T. testified, "Well, no one, because, you know, we were doing our drugs."

Danairy Nevarez, the CPS investigator, testified that her investigation "revealed that there was in fact domestic violence" in the relationship between H.T. and S.S., based on the corroboration of other people who knew the couple. Nevarez also testified that S.S. was uncooperative during the investigation, had refused to meet with Nevarez in person, and had refused to take a drug test. According to Nevarez, when she had spoken with S.S. over the phone, "[h]e was uncooperative, he was really angry. He said he didn't have to do anything for us anymore, he had done it in the past and he did not have to do it again."

Nevarez further testified that she had interviewed the children during the investigation and that the older child, S.K.S., was aware of the domestic violence and drug use in his parents' home. Nevarez explained, "[S.K.S.] had recollections of the parents arguing, the drug use of the parents. He was really quiet at first, but after taking him to the final placement that I took him to, he started opening up, and he had extensive knowledge of drugs, the drug use and the methods of the consumption of drugs."

Tim Enevoldsen, the licensed professional counselor who had provided counseling services to S.K.S., testified that S.K.S. had told him "just a week ago" prior to trial that "it was his desire to not have a further relationship with his father." Enevoldsen claimed that it was "very rare" for a child to feel that way toward a parent. He explained, "Mostly with kids, I think if there's even an inkling that they could possibly go back to the parents, they would never say anything subversive about their parents for fear of some retribution, so for him to come right out and say, 'I don't want

8

to live with my father ever again,' I was rather floored."  Enevoldsen also testified that S.K.S. suffered from "reactive attachment disorder," which Enevoldsen described as "a disorder that basically describes a person who has lost their trust in the world's ability to care for them."  When asked if "exposure to his father [would] help [S.K.S.]" overcome this condition, Enevoldsen testified, "I think it would exacerbate his present problems."  Enevoldsen further testified that S.K.S. "was exposed to a great degree of sexually explicit material in his life with his father," specifically "pornographic information both in magazines and on the internet," and that as a result of this exposure, S.K.S. had "become a very sexualized individual" who "struggles with that problem every day of his life, nearly all day long."  For these reasons, Enevoldsen believed that it would not be in S.K.S.'s best interest "to maintain a relationship with his father."

Dawn Daniel, the Department caseworker, testified that S.S. had not completed most of the Department's services that had been ordered by the court, including random drug testing, and that S.S. had failed to "mak[e] any effort" to address the Department's concerns.  Daniel also testified that she believed terminating S.S.'s parental rights would help achieve permanence for the children.  Daniel explained that V.S., the younger child, "is currently placed in Austin with a foster family" and that V.S. "treats them as family, calls them Mom and Dad, has a bond with the siblings."  Daniel added that the family "want[s] to adopt [V.S.]," that "[t]hey love him," and that it was in V.S.'s best interest to remain in that home.

On cross-examination, Daniel acknowledged that the future placement of S.K.S., the fourteen-year-old child, was uncertain, due to his age and his history of "sexual acting out, which makes him harder to place in a foster home."  Daniel added that S.K.S.'s current placement, a foster

9

home in Plainview, "is not interested in adopting [S.K.S.] or any child at this time" and that S.K.S. could remain in the foster system until he turned 18. However, Daniel also testified that termination of S.S.'s parental rights would at least allow for the possibility that S.K.S. might be adopted and "find a forever home." Additionally, Daniel testified, "It would allow him to close that gap of not knowing what's going to happen to him. It would allow him to move forward." According to Daniel, S.K.S. "has expressed numerous times that he would hope that this case would be over, he does not want to see his dad, he does want the parental rights to be terminated. He's advised me of that numerous times."

In summary, the evidence tended to show that S.S. had: (1) an extensive history of using methamphetamine and other drugs and committing acts of domestic violence against his children's mother; (2) neglected the care of his children due to his ongoing drug use; (3) "abandoned" the children at the end of his relationship with the children's mother; (4) exposed his older child to pornographic material, which had contributed to the child "sexually acting out" in an inappropriate manner; and (5) refused to cooperate with the Department during the case or complete court-ordered services. The evidence also tended to show that the younger child had been placed with a family that loved him and wanted to adopt him and that the older child, although lacking a permanent placement at the time of trial, was adamant in "his desire to not have a further relationship with his father." Viewing the above and other evidence in the light most favorable to the district court's finding, we conclude that the evidence is legally sufficient to prove that termination of S.S.'s parental rights was in the best interest of the children.

After giving due consideration to the disputed evidence in the case, we reach the same conclusion regarding the factual sufficiency of the evidence. There was disputed evidence of whether termination would be in the best interest of the older child, given that the Department lacked a permanent placement for the child and that the child's age and behavioral history made it unlikely that he would be adopted in the future. However, Daniel testified that termination of S.S.'s parental rights would at least allow for the possibility that S.K.S. could be adopted in the future and would enable the child to "move forward" with his life. The trial court was entitled to credit this testimony, particularly in light of the undisputed evidence, summarized above, that the older child did not want to return to his father's care. In light of the entire record, we cannot say that the disputed evidence that a reasonable factfinder could not have credited in favor of the finding is so significant that a factfinder could not reasonably have formed a firm belief or conviction that termination of S.S.'s parental rights was in the best interest of the child.

We overrule S.S.'s first and second issues.

## CONCLUSION

We affirm the trial court's termination order.

_____

Bob Pemberton, Justice

Before Chief Justice Rose, Justices Pemberton and Goodwin

Affirmed

Filed: December 8, 2017

11